# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TONY AND ANNETTE SCHAEFER,
Individually and on behalf of their
minor son, AS,

       Plaintiffs,

vs.                                                                      No. CIV 09-1119 JB/KBM

LAS CRUCES PUBLIC SCHOOL DISTRICT,
DANTE THACKER, Principal at Zia Middle School,
DANIEL GOMEZ, Assistant Principal at Zia Middle
School, SONIA DIAZ, Superintendent of the Las Cruces
Public Schools, the Safety Officer at Zia Middle School and
other John/Jane Doe Defendants, including the School Nurse,
in their official capacity and individual capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on:  (i) Defendants Las Cruces Public School

District, Dante Thacker, and Daniel Gomez' Motion to Dismiss Plaintiffs' Complaint on the Basis

of Qualified Immunity and Other Grounds, filed November 25, 2009 (Doc. 4); and (ii) Defendant

Sonia Diaz' Motion to Dismiss Plaintiffs' Complaint on the Basis of Qualified Immunity and Other

Grounds, filed December 30, 2009 (Doc. 18).[1]  The Court held a hearing on April 26, 2010.  The

primary issues are:  (i) whether Plaintiffs Tony and Annette Schaefers' Complaint states any federal-

law claims against the Defendants; and (ii) if it does not, whether the Court should remand the state-

law claims to state court or maintain supplemental jurisdiction over them under 28 U.S.C. § 1367.

Because the Court concludes that the Schaefers' Complaint does not state a federal cause of action,

---

[1] Diaz' motion to dismiss simply incorporates by reference the other Defendants' motion.
The Court will refer to the Las Cruces Public School District, Thacker, Gomez, and Diaz
collectively as the Defendants.

the Court will dismiss the federal claims, and remand the remaining state claims and the case to state court from which it was removed.

## FACTUAL BACKGROUND

This case involves a child being abused at school by other students, and a resulting suit against the school and various school officials/employees for failure to take steps to stop such harassment from occurring.  Defendant Las Cruces Public School District is a governmental agency of the state of New Mexico.  See Complaint for Damages ¶ 6, at 2, filed December 7, 2009 (Doc. 6) ("Complaint").  Defendant Sonia Diaz is the former Superintendent of the Las Cruces Public Schools.  See Complaint ¶ 4, at 2.  Defendant Dante Thacker is the former Principal of Zia Middle School.  See id. ¶ 2, at 1. Defendant Daniel Gomez is the former Assistant Principal of Zia Middle School.  See id. ¶ 3, at 2.

The Schaefers allege that, during September of 2006, there were three attacks against sixth grade students at Zia Middle School, at least one of which involved one student "racking" another student.[2]  Complaint ¶¶ 22-33, at 5-7.  According to the Schaefers, on information and belief, the Defendants made no efforts to identify or punish the bullies or to protect the victims.  See id. ¶¶ 11-27, 30, at 2-6.  On or about October 18, 2006, an unknown student "racked" AS while AS walked through a courtyard on his way to class at Zia Middle School.  Id. ¶ 28, at 6.  On October 20, 2006,

_____

[2] The parties define being "racked" as being "kicked and/or punched in the testicles." Motion at 2; Complaint ¶ 24, at 5.  That use appears to be one recent definition of the term.  See UrbanDictionary.com, "racked," http://www.urbandictionary.com/define.php?term=racked (last visited April 26, 2010) ("[G]etting hit in the nuts really hard . . . .").  That definition also has some historical grounding.  See The American Heritage Dictionary of the English Language at 1489 (3d ed. 1992)("**rack** . . . 4.a. A state of intense anguish.  b. A cause of intense anguish. . . . **racked, rack•ing, racks** . . . To cause great physical or mental suffering to . . . ."); Oxford English Dictionary Online, "rack, v." (2d ed. 1989, Oxford University Press), available at http://dictionary.oed.com/cgi/entry/50195918 (last accessed April 26, 2010)("**b.** . . . to cause extreme pain to (a person or a part of the body).").

AS sought treatment for persistent pain he was experiencing in his abdomen and testicles.  See id.

¶ 32, at 7.  An ultrasound revealed that AS had epididymitis[3] with scrotal wall edema,[4] hydrocele,[5]

and two epididymis cysts.[6] After the incident involving AS, on or about October 30, 2006, all boys

at Zia Middle School were required to attend a meeting where school faculty discussed the injuries

that can result from being "racked."  Id. ¶ 34, at 7.  AS was identified by name at this meeting as a

student who had suffered such injuries.  See id.  The Schaefers admit that Zia Middle School held

two separate meetings where the dangers and consequences of student-on-student bullying,

harassment, fighting, gangs, and assaults were discussed.  See id. ¶¶ 9, 34, at 2, 7.  The first meeting

was during the sixth grade orientation, in August of 2006, before any of the alleged assaults

---

[3] WebMD describes epididymitis as follows: "The epididymis is a long, tightly coiled tube that lies above and behind each testicle. It collects and stores maturing sperm made by the testicles prior to ejaculation. Inflammation and infection of the epididymis is called epididymitis." WebMD, Epididymitis - Topic Overview, http://http://men.webmd.com/tc/epididymitis-topic-overview (last visited April 26, 2010).  WebMD also states that epididymitis can be caused by "an injury to the groin." Id.

[4] Edema generally refers to swelling.  Scrotal wall edema thus refers to a swelling of the scrotal wall.  See The American Heritage Dictionary of the English Language at 584 ("1. . . . An excessive accumulation of serous fluid in tissue spaces or a body cavity."); id. at 1648 ("**serous fluid** *n.* Any of various body fluids resembling serum . . . ."); id. ("**se•rum** . . . n. . . . **1.** The clear yellowish fluid obtained upon separating whole blood into its solid and liquid components . . . **3.** Watery fluid from animal tissue, such as that found in edema.").

[5] Hydrocele refers to a body cavity or the scrotum filling with fluid.  See The American Heritage Dictionary of the English Language at 885 ("A pathological accumulation of serous fluid in a body cavity, especially in the scrotal pouch.").

[6] Cysts are similar to blisters.  The term "cyst" refers to "[a]n abnormal membranous sac containing a gaseous, liquid, or semisolid substance."  The American Heritage Dictionary of the English Language at 466.  Epididymis cysts would thus be small blister-like sacs forming on the epididymis. Indeed, WebMD defines an Epididymal Cyst -- which it refers to as Spermatocele – as "a sperm-filled cyst in the long, tightly coiled tube that lies above and behind each testicle." WebMD, Spermatocele (Epididymal Cyst) - Topic Overview, http://children.webmd.com/tc/ spermatocele-epididymal-cyst-topic-overview (last visited April 26, 2010).

occurred.  <u>See</u> <u>id.</u> ¶ 9, at 2.  The other occurred on October 30, approximately two weeks after the attack on AS.  <u>See</u> <u>id.</u> ¶ 34, at 7.

## PROCEDURAL BACKGROUND

On October 16, 2009, the Schaefers brought a four-count Complaint in the Third Judicial District Court of New Mexico, County of Doña Ana, against the Las Cruces School District, Thacker, Gomez, Diaz, the unnamed Safety Officer of Zia Middle School, the unnamed School Nurse of Zia Middle School, and John and Jane Doe Defendants.  <u>See</u> Complaint for Damages, filed November 24, 2009 (Doc. 2-2); Verified Notice of Removal ¶ 1, at 1, filed November 24, 2009 (Doc. 2).  The Schaefers bring Counts I, II, and III -- negligence, prima-facie tort, and intentional infliction of emotional distress -- against the Defendants in their official capacities.  They bring Count IV -- constitutional violations -- against the Defendants in their individual and official capacities.  <u>See</u> Motion at 2.

In Count I for negligence, the Plaintiffs allege the Las Cruces School District, Thacker, Gomez, Diaz, and John/Jane Does 1-5 had a duty to:  (i) establish and implement appropriate policies and procedures for protecting students from student-on-student harassment, bullying, assault, and battery; (ii) train and evaluate teachers, safety officers, school nurses and others in the identification, investigation, and discipline of such potentially dangerous situations and actions; (iii) establish appropriate policies to identify risk prone areas in the school and to supervise those areas; and (iv) provide training to students regarding unacceptable behavior.  The Plaintiffs further allege that, as a direct and proximate result of Las Cruces Public Schools, Thacker, Gomez, and Diaz' breach of their duty, AS was injured and suffered damages.

The Defendants move the Court, pursuant to rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of the Schaefers' claims.  Regarding the state-law claims, the

Defendants argue that the Schaefers' claims for negligent supervision, prima-facie tort, and intentional infliction of emotional distress are not permitted under the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 through 41-4-27 ("NMTCA"), and are therefore barred by sovereign immunity. See Motion at 6-7, 10-11. They also argue that the pleadings are insufficient to establish a claim of negligent operation and maintenance of a building. See id. at 7-9. They further argue that the Defendants have no duty to protect students from assaults by other students. See id. at 9-10. Regarding the Schaefers' constitutional claims, the Defendants argue that the Schaefers have failed to state a claim for supervisor liability against the Las Cruces School District. See Motion at 13-14. They argue that the Las Cruces School District's conduct was, at worst, negligent, and that the Schaefers have failed to state a claim for a violation of substantive due process under either the special-relationship or danger-creation theories. See id. at 14-18. They also assert that the Schaefers have failed to state a claim for negligent failure to train and for a violation of the equal-protection clause. See Motion at 18-20. Regarding the claims against the Defendants in their individual capacities, the Defendants assert that: (i) the Schaefers fail to assert any acts taken by the Defendants in their individual capacity; and (ii) that the Defendants are entitled to qualified immunity as to the individual-capacity claims. See id. at 20-24. The Defendants also argue that Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 through 1688, does not create a private cause of action against individuals, that the Schaefers have failed to state a claim under Title IX, and that Family Educational Rights and Private Act of 1974, 20 U.S.C. § 1232g ("FERPA"), does not create a private cause of action that the Schaefers can assert against any of the Defendants. See Motion at 24-25.

Regarding the state-law claims, the Schaefers respond by first arguing that their pleadings are not deficient and that they meet the pleading requirements of rule 8 of the Federal Rules of Civil

Procedures.  See Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss at 2-4, filed December 9, 2009 (Doc. 7)("Response").  They argue that their negligence claim is permitted under the NMTCA, and that there exists a genuine issue of material fact whether the Defendants were acting within the scope of their duties, making summary judgment inappropriate.  See Response at 4-13.  They assert that the Defendants have a special relationship with the students which, as a matter of law, creates a duty to protect the students from the criminal acts of third parties.  See id. at 13-15.  The Schaefers also assert that they properly state claims for violations of constitutional rights.  They argue their claim adequately pled a supervisor-liability claim under Monell v. New York City Department of Social Services, 436 U.S. 658, 689 (1978), that they properly allege a claim for substantive-due-process violation under the danger-creation theory, that the individual Defendants are not entitled to qualified immunity on the claims against them in their individual capacity, and that they state valid Title IX and equal-protection claims.  See Response at 15-32.

On April 28, 2010, the Defendants filed a supplemental brief providing further argument and authority with respect to the Schaefers' Title IX claim.  In the supplemental brief, the Defendants argue more specifically that the Schaefers fail to state a Title IX claim because the conduct at issue was not sexual assault.  See Defendants Las Cruces Public School District, Dante Thacker, Daniel Gomez' Supplemental Briefing on Title IX, filed April 28, 2010 (Doc. 27)("Supplement").  They insist the conduct was not based on the gender of the victim and was not sexual in nature.  See Supplement at 3.  They also assert that the Defendants were not deliberately indifferent because they held an assembly in response to the incidents, in which they informed the male students of the injuries that can result from racking and that such conduct would not be tolerated.  See id. at 3-4.  Finally, they argue that the conduct was not severe or pervasive.  See id. at 4.

The Schaefers also filed a supplemental brief on the Title IX issue.  In it, the Schaefers argue

that racking is a form of sexual harassment, even if inflicted by another male.  See Plaintiffs'

Supplemental Briefing on Title IX at 2-5, filed April 30, 2010 (Doc. 30)("Schaefers' Supplement").

They then walk through the elements of a Title IX claim and argue that the facts pled satisfy the

pleading requirements.  See Schaefers' Supplement at 5-9.  The Schaefers' supplement again admits

that the Defendants took steps to ensure that no sixth-grade male student was racked once the

Schaefers complained to the Defendants and AS missed school because of his injuries.  See id. at

6.  The Court also notes that at least one of the facts referenced in the supplement was not mentioned

in the Complaint -- that the other students made "objectively offensive statements pertaining to the

consequences of the racking, including vulgar statements regarding the size of AS' testicles after

the incident, his potential impotence, and comments on his manhood."  Id. at 7.  As it must, the

Court will restrict its analysis to the facts properly alleged in the Complaint.

## LAW REGARDING MOTIONS TO DISMISS

A motion to dismiss requires that the court determine, while accepting all facts pled in the

complaint as true and granting all reasonable inferences from the pleadings in favor of the plaintiff,

whether the complaint states a cause of action for which relief can be granted.  See Park Univ.

Enters., Inc. v. Am. Cas. Co., 442 F .3d 1239, 1244 (10th Cir. 2006).  This standard remains intact

even after the Supreme Court of the United States' recent decisions on rule 8's pleading

requirements.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)("A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."); Christensen v. Park City Mun. Corp., 554 F.3d

1271, 1276 (10th Cir. 2009)("Even after Twombly, the factual allegations need only contain enough

allegations of fact 'to state a claim to relief that is plausible on its face.'")(quoting Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  Thus, a motion to dismiss does not ask the court to analyze

the plaintiff's likelihood of success on the merits; rather, the court must find only a reason to believe that the plaintiff has a "reasonable likelihood of mustering factual support for the claims," Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007), and that the plaintiff's claims are "plausible," Christensen v. Park City Mun. Corp., 554 F.3d at 1276 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

A motion to dismiss is a request to dismiss a case before discovery has taken place and thus permits only an assessment whether a complaint is sufficient on its face.  In adjudicating a motion to dismiss, a court may neither grant the motion because it believes it is unlikely the plaintiff can prove the allegations, see Robbins v. Oklahoma, 519 F.3d 1242, 1246 (10th Cir. 2008), nor may it "weigh potential evidence that the parties might present at trial" in assessing the motion's merit, Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001)(quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").  Rather, 42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the

claimant's federally protected rights.  To state a claim upon which relief can be granted under

§ 1983, a plaintiff must allege:  (i) a deprivation of a federal right; and (ii) that the person who

deprived the plaintiff of that right acted under color of state law.  See West v. Aikins, 487 U.S. 42,

48 (1988).  Broken down differently, a plaintiff

> must establish (1) a violation of rights protected by the federal Constitution or
> created by federal statute or regulation, (2) proximately caused (3) by the conduct
> of a "person" (4) who acted under color of any statute, ordinance, regulation,
> custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. Mar. 30,

2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal

judiciary to displace state law through the creation of a body of general federal tort law.  See Paul

v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge, 403 U.S. 88,

101-102 (1971)(civil-rights statute).

　　　The Supreme Court has made clear that there is no respondeat superior liability under

§ 1983.  See Ashcroft v. Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to

Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution."); Bd. of County Comm'rs v.

Brown, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the

existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. New York

City Dept. of Soc. Servs., 436 U.S. at 689.  Further, the United States Court of Appeals for the Tenth

Circuit has held that supervisors are not liable under § 1983 "unless there is an affirmative link

between the constitutional deprivation and the supervisor's exercise of control or direction, his

personal participation, or his failure to supervise."  Kiesling v. Troughton, 107 F.3d 880 (Table),

1997 WL 111256, at *2 (10th Cir. Mar. 13, 1997)(citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)).  They can be held liable only for their own unconstitutional or illegal policies, and not for the tortious acts of their employees.  Supervisory liability requires a showing that said policies were a "deliberate or conscious choice."  Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)(citations and internal quotations omitted).  See Bd. of County Comm'rs v. Brown, 502 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.")(emphasis in original).

These standards apply for allegations of liability based on failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons.  Barney v. Pulsipher, 143 F.3d at 1367, 1309 n.8.  "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable.  Id. at 1307.

> In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Id. at 1307-08.  Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations."  Id. at 1308.

## LAW REGARDING SUBSTANTIVE DUE-PROCESS CLAIMS

The Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  In general, state actors may

be held liable under § 1983 only for their own acts and not for the acts of third parties.  See DeShaney v. Winnebago County of Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 195.  The Due Process Clause is not a guarantee of a minimal level of safety and security.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 195.  "As a general matter, . . . a state's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 197.  See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1125 (10th Cir. 2008)).  Generally, negligence does not trigger the Due Process Clause's protections.  See Davidson v. Cannon, 474 U.S. 344, 348 (1986).

      1.    **Exceptions to the General Rule.**

There are, however, two exceptions to this general rule.  First, the special-relationship doctrine arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to provide protection to that individual.  See Christianson v. City of Tulsa, 332 F.3d 1270, 1280 (10th Cir. 2003); Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d 991, 994-995 (10th Cir. 1994).  Second, the danger-creation theory provides that a state may also be liable for an individual's safety if it created the danger that harmed the individual.  See Christianson v. City of Tulsa, 332 F.3d at 1280.

      2.    **Special-Relationship Doctrine.**

The first exception to the general principle that a state's negligent failure to protect an individual cannot trigger liability under the due process clause is the special-relationship doctrine. A plaintiff must show involuntary restraint by the government to establish a duty to protect under

-11-

the special-relationship doctrine.  See Liebson v. N.M. Corr. Dep't, 73 F.3d 274, 276 (10th Cir.

1996).  "A special relationship exists when the state assumes control over an individual sufficient

to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a

prisoner or involuntarily committed mental patient)."  Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir.

1995).  Compulsory attendance laws for public schools do not create a duty under the Due Process

Clause to protect students from assaults by other students while attending school, even where the

school knew or should have known of the danger presented.  See Graham v. Indep. Sch. Dist. No.

1-89, 22 F.3d at 994-995; Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir. 1992).

   **3.      Danger-Creation Exception.**

       The Due Process Clause protects against "deliberately wrongful government decisions rather

than merely negligent government conduct."  Uhlrig v. Harder, 64 F.3d at 573.  The danger-creation

exception to this rule applies only when "a state actor affirmatively acts to create, or increases a

plaintiff's vulnerability to, or danger from private violence."  Currier v. Doran, 242 F.3d 905, 923

(10th Cir. 2001).  Under a danger-creation theory, there will be no § 1983 liability absent "an intent

to harm" or "an intent to place a person unreasonably at risk of harm."  Uhlrig v. Harder, 64 F.3d

at 573.  To state a prima-facie case, the plaintiff must show that his or her danger-creation claim

for due-process violations meets a six-part test:  (i) the state and individual actors must have created

the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be

a member of a limited and specifically definable group; (iii) the defendant's conduct must put the

plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious

and known; (v) the defendant must have acted recklessly in conscious disregard of that risk; and (vi)

such conduct, when viewed in total, must shock the conscience.  See Rost ex rel. K.C. v. Steamboat

Springs RE-2 Sch. Dist., 511 F.3d at 1126.

-12-

The Tenth Circuit has focused on the deliberateness of the conduct at issue.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir. 2003).  The defendant must recognize the unreasonableness of the risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff.  See id. at 573 n.8.  While "an intent to harm" follows the traditional tort law concept of intentionality, the Tenth Circuit has defined "an intent to place a person unreasonably at risk," as when a state actor "was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." Medina v. City & County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992).

### 4.   **What Shocks the Conscience.**

"It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)).  "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995). "This is a 'high level of outrageousness.'" Camuglia v. the City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

Camuglia v. the City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

## LAW REGARDING EQUAL-PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment guarantees that "no states shall . . . deny to any person within the jurisdiction to the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'"  Soskin v. Reinertson, 353 F.3d 1242, 1247 (10th Cir. 2004)(quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).  See Corder v. Lewis Palmer School Dist. No. 38, 566 F.3d 1219, 1233 (10th Cir. 2009)("Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'")(quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Generally, to state a claim under § 1983 for violation of the equal-protection clause, the plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class.

A state actor can generally be subject to liability only for its own conduct under 42 U.S.C. § 1983.  See Robbins v. Oklahoma, 519 F.3d at 1251 (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 197).  At least in the Tenth Circuit, however, under some circumstances, sexual harassment by a third-party can subject a supervisor or municipality to liability for violation of the equal-protection clause -- not for the harasser's conduct, per se, but for failure to take adequate steps to stop it.  See Murrell v. Sch. Dist. No. 1, 186 F.3d at 1249-51 (discussing one student's sexual harassment of another and stating, "sexual harassment by a state actor can constitute a violation of the equal protection clause.").[7]  To state such a claim, the plaintiff

---

[7] For the purpose of this opinion, the Court assumes without deciding that being racked is a form of sexual assault or sexual harassment.  Racking could be considered sexual assault under a broad definition of the term sexual assault, given that Black's Law Dictionary defines "sexual assault" as "[o]ffensive sexual contact with another person," Black's Law Dictionary at 131 (9th ed.

must demonstrate that a state employee's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority.  To subject a governmental entity to liability, "a municipal policy must be a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers.'"  Absent such an official policy, a municipality may also be held liable if the discriminatory practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

Murrell v. Sch. Dist. No. 1, 186 F.3d at 1249 (internal citations omitted).  Nevertheless, the Tenth Circuit has stated that "a failure to prevent sexual harassment by a student *before it occurs* does not violate . . . the Fourteenth Amendment absent a showing of an institutional policy of indifference.  However, a refusal to remedy known sexual harassment is actionable."  Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.9 (emphasis in original).  Finally,

> [t]he party alleging discrimination has the burden of proving that the state's conduct was motivated by a discriminatory purpose.  See Witus v. Georgia, 385 U.S. 545, 550 (1967)(explaining that "[t]he burden is, of course, on the petitioners to prove the

---

2009), and The American Heritage Dictionary of the English Language defines "sexual" as "[o]f, relating to, involving, or characteristic of sex, sexuality, the sexes, or the sex organs and their functions," The American Heritage Dictionary of the English Language at 1654 (3d ed. 1992). Racking someone is an offensive contact with a person involving his sex organs.  The Court notes, however, that a more narrow definition of sexual assault might exclude being racked in the context of school misconduct.  Although racking involves unwelcomed and harmful contact with the genitals, the assaulting student likely has little or no interest in the sexual nature of the contact, and cares more or only about inflicting pain upon the victim.  See Seamons v. Snow, 84 F.3d 1226, 1239-40 (10th Cir. 1996)(McKay, J., dissenting)(finding acts of harassment to be sexual in nature where they "derive their power to embarrass and to intimidate from their sexual and sex-based nature"); The American Heritage Dictionary of the English Language at 1654 ("sex•u•al . . . 2. Implying or symbolizing erotic desires or activity . . . .").  Boys learn early in life that the genitals are a tender spot, and a swift strike will quickly incapacitate their victim.  It would not be unreasonable to find that the conduct alleged is assault, but that the eighth-grade male assailants' decision to strike the sixth-grade male victims in the genitals -- which is a very effective place to strike a male -- does not raise the conduct to the level of sexual assault in a way that would violate the equal-protection clause.  See Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 478 (1981)("[W]hile detrimental gender classifications by government often violate the Constitution, they do not always do so, for the reason that there are differences between males and females that the Constitution necessarily recognizes.").  Nevertheless, for the purpose of this opinion the Court will consider racking to be a form of sexual assault or sexual harassment.

existence of purposeful discrimination"); <u>Sauers v. Salt Lake County</u>, 1 F.3d 1122, 1130 (10th Cir.1993)(stating that "[a] plaintiff in an equal protection action has the burden of demonstrating discriminatory intent."). It is "hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation." <u>Roe v. Keady</u>, 329 F.3d 1188, 1191-92 (10th Cir. 2003).

<u>Bell v. Bd. of Educ. of the Albuquerque Pub. Schs.</u>, No. CIV 06-1137 JB/ACT, 2008 WL 4104118, at *15 (D.N.M. May 6, 2008)(Browning, J.).

On the other hand, to hold a supervisory employee liable in his or her individual capacity for sexual harassment conducted by a third party, the plaintiff must show "deliberate indifference to known sexual harassment." <u>Murrell v. Sch. Dist. No. 1</u>, 186 F.3d at 1250. "Liability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant and not upon mere negligence." <u>Id.</u> (quoting <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1399 (10th Cir. 1992))(alterations omitted). To show that the supervisory employee's conduct was "deliberate" the plaintiff must "state facts sufficient to allege 'defendants actually knew of and acquiesced in' [the third-party's] behavior." <u>Murrell v. Sch. Dist. No. 1</u>, 186 F.3d at 1250.

## LAW REGARDING TITLE IX

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although both can be predicated on the same conduct, a claim of sex discrimination under Title IX is independent of a claim for violation of the equal-protection clause under the Fourteenth Amendment. <u>See</u> <u>Murrell v. Sch. Dist. No. 1</u>, 186 F.3d at 1251 n.8 ("A state actor's acquiescence in sex discrimination is independently actionable under the Fourteenth Amendment regardless of the dictates of Title IX which, as noted above, provides its own private right of action."). "Sexual harassment is a form of discrimination on the basis of sex and is actionable under Title IX." <u>Escue</u>

-16-

v. Northern OK College, 450 F.3d 1146, 1152 (10th Cir. 2006)(discussing sexual harassment of student by teacher)(citing Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 75 (1992)). "Title IX is enforceable through an implied private right of action for which money damages are available." Murrell v. Sch. Dist. No. 1, 186 F.3d 1238, 1245-46 (10th Cir. 1999). The Supreme Court has stated however, that "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 640 (1999). Furthermore, Title IX does not authorize a cause of action against individuals; rather, it creates a right enforceable against educational institutions only. See Fitzgerald v. Barnstable Sch. Comm., 129 S. Ct. 788, 796 (2009)("Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."); Davis v. Monroe County Bd. of Educ., 526 U.S. at 640-41 ("The Government's enforcement power may only be exercised against the funding recipient . . . and we have not extended damages liability under Title IX to parties outside the scope of this power."); Sossamon v. Lone Star State of Texas, 560 F.3d 316, 328-29 (5th Cir. 2009) ("Congressional enactments pursuant to the Spending Clause do not themselves impose direct liability on a non-party to the contract between the state and the federal government."); Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007)("Our court, in addressing other federal statutes that emanate directly from Congress' Spending Power . . . has repeatedly held that Congress cannot use its Spending Power to subject a non-recipient of federal funds, including a state official acting his or her individual capacity, to private liability for monetary damages."); Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988)("In implying a cause of action under Title IX, the Supreme Court has considered only actions against educational institutions."); Clay v. Board of Trustees of Neosho Community College, 905 F. Supp. 1488, 1495-96 (D. Kan. 1995)("Title IX actions may only be

brought against an educational institution, not an individual acting as an administrator or employee

for the institution."); Aurelia D. v. Monroe County Bd. of Educ., 862 F. Supp. 363, 367 (M.D. Ga.

1994), rev'd in part on other grounds Davis v. Monroe County Bd. of Educ., 74 F.3d 1186 (11th Cir.

1996).

> The Tenth Circuit has held that
>
> > [a] school recipient of federal funds may be liable under Title IX for its own conduct
> > in being deliberately indifferent to student-on-student sexual harassment.  Davis v.
> > Monroe County Bd. of Educ., 526 U.S. 629, 643 . . . (1999).  A school district may
> > be liable under Title IX provided it (1) has actual knowledge of, and (2) is
> > deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively
> > offensive as to (4) deprive access to the educational benefits or opportunities
> > provided by the school.  Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238,
> > 1246 (10th Cir.1999).

Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119.  "[D]istrict courts differ

as to whether notice of prior complaints as opposed to notice of the current harassment for which

redress is sought triggers liability under Title IX."  Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch.

Dist., 511 F.3d at 1119 (declining to resolve the issue because the defendant had actual notice of the

specific harassment of the plaintiff's daughter).  See Escue v. Northern OK College, 450 F.3d at

1153 ("Lower courts differ on whether notice sufficient to trigger liability may consist of prior

complaints or must consist of notice regarding current harassment in the recipient's

programs.")(citing Johnson v. Galen Health Insts., Inc., 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003),

and Baynard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001)).  On the other hand, "a failure to prevent

sexual harassment by a student *before it occurs* does not violate Title IX . . . absent a showing of an

institutional policy of indifference.  However, a refusal to remedy known sexual harassment is

actionable."  Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.9 (emphasis in original).

> The Tenth Circuit has recently outlined the elements of a claim of supervisory liability under

Title IX as well, though it was doing so in the context of a school district being held liable for sexual harassment by one of its teachers:

> As we have explained, this sort of supervisory liability is imposed: (1) "only if the [school] remains deliberately indifferent to acts of harassment of which it has actual knowledge," <u>Murrell v. Sch. Dist. No. 1, Denver, Colo.</u>, 186 F.3d [at] 1246 . . . , (2) the harassment was reported to an "appropriate person . . . with the authority to take corrective action to end the discrimination," <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 290 . . . (1998), and (3) the harassment was "so severe, pervasive and objectively offensive that it . . . deprived the victim of access to the educational benefits or opportunities provided by the school," <u>Murrell</u>, 186 F.3d at 1246.

<u>Escue v. Northern OK College</u>, 450 F.3d at 1152.  "A district is deliberately indifferent to acts of student-on-student harassment 'only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"  <u>Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.</u>, 511 F.3d at 1119 (quoting <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. at 648).  Where a Title IX or equal-protection defendant responds to reports of student-on-student sexual harassment, but simply does not do enough to stop the problem, the conduct is viewed as negligence, rather than deliberate indifference, and not actionable under Title IX.  <u>See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.</u>, 511 F.3d at 1125 ("[T]he evidence shows that the district was aware of several discrete problems and was working to remedy them -- which only raises an issue of the district's negligence, not its deliberate indifference. The attempted remedial measures suggest the district was not deliberately indifferent to or tacitly approving of the misconduct.").

## <u>RELEVANT LAW OF FERPA</u>

Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records. The Act directs the Secretary of Education to withhold federal funds from any public or private "educational agency or institution" that fails to comply with these conditions.

Gonzaga Univ. v. Doe, 536 U.S. 273, 278 (2002).  The Secretary of Education is charged with "investigating, processing, reviewing, and adjudicating violations" of FERPA.  Gonzaga Univ. v. Doe, 536 U.S. at 278 (quoting 20 U.S.C. § 1232g(g)).  The nondisclosure provisions of FERPA do not create a private right of action, nor do they create a right enforceable under 42. U.S.C. § 1983. See Gonzaga Univ. v. Doe, 536 U.S. at 279-80; Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1062 (10th Cir. 2002).

## RELEVANT LAW OF QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  Qualified immunity "protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. Civ. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009) (Browning J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time

of the alleged unlawful activity.  See Riggins v. Goodman, 572 F .3d 1101, 1107 (10th Cir. 2009);

Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In assessing

whether the right was clearly established, the court asks whether the right was sufficiently clear that

a reasonable person in the defendant's shoes would understand that what he or she did violated that

right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d at 1327.  In Saucier v. Katz, 533 U.S.

194 (2001), overruled in part by Pearson v. Callahan, the Supreme Court held that the court must

decide whether there was a constitutional violation first, before it decides whether the law is clearly

established.  See 533 U.S. at 200-01.  The Supreme Court no longer requires the courts to analyze

the issues in that order.  See Pearson v. Callahan, 129 S. Ct. at 818.

A clearly established right is generally defined as a right so thoroughly developed and

consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."

Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir.1983), cert. denied, 469 U.S. 880 (1984).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth

Circuit decision on point, or the clearly established weight of authority from other courts must have

found the law to be as the plaintiff maintains."  Strepka v. Miller, 2001 WL 1475058, at * 5 (10th

Cir. 2001)(citing Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  See Medina v. City &

County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  "In determining whether the right was

'clearly established,' the court assesses the objective legal reasonableness of the action at the time

of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a

reasonable official would understand that what he is doing violates that right.'"  Holland ex rel.

Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640

(1987)).  On the other hand, the Supreme Court has observed that it is generally not necessary to find

a controlling decision declaring the "very action in question . . . unlawful."  Anderson v. Creighton,

483 U.S. at 640.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense.  In Pearson v. Callahan, the Supreme Court held that, "while the sequence set forth [in Saucier v. Katz] is often appropriate, it should no longer be regarded as mandatory."  129 S. Ct. at 818.  Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  Id.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial.  See Pearson v. Callahan, 129 S. Ct. at 819.  Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified-immunity defense generally fails.  See Cannon v. City & County of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

## ANALYSIS

Because the Court's jurisdiction depends upon the presence of federal claims, and because the Court might not keep the case if it dismisses all the federal claims, the Court will address the federal claims first.  The Complaint is unclear upon what grounds and by what procedural vehicle the Schaefers are asserting their federal claims.  The Complaint makes reference to equal-protection rights, substantive due-process rights, Title IX, and FERPA.  The Complaint also frequently makes reference to the Defendants' "conduct" and the Defendants' "acts," see, e.g., Complaint ¶¶ 64, 66, at 13 ("Defendants . . . acted with reckless indifference and malice . . . Defendant[s] . . . affirmatively placed AS in a position of danger . . . ."), but the only detailed factual allegations mention only what the Defendants failed to do, see, e.g., Complaint ¶¶ 55-72, at 10-14 ("Defendants . . . were aware of the risk . . . yet failed to take action . . . .  Defendants['] . . . failure to take action

. . . .  Defendants['] failure to investigate . . . .  By failing to develop and implement training programs . . . .  Defendants['] failure to counsel boys . . . .  Defendant LCPS's failure to train . . . . Defendants . . . failed to adopt or implement . . . .  Defendants . . . failed to maintain the confidentiality . . . .").  The only detailed allegation of affirmative conduct is found in Paragraph 70, where the Schaefers allege that the Defendants "made [a] disclosure of [confidential] information . . . without [AS's] parents' permission and thereby violated [FERPA]."  Complaint ¶ 70, at 14.  The Schaefers allege that this disclosure violated AS's substantive due-process rights.  See id. ¶ 71, at 14.  The Court will therefore address all of the Schaefers' claims as claims of inaction except those relating to the disclosure of the alleged confidential information.[8]

The Court notes that, upon initial review of the Schaefers' Complaint, the Court thought this case is most appropriately characterized as an institutional negligence case.  It appears that the Schaefers endeavor to bootstrap their situation into a federal case by characterizing being racked as sexual assault and by alleging that the situation as a whole "shocks the conscience."  Upon closer scrutiny, however, the Court finds that the Schaefers' allegations, the vast majority of which are "[u]pon information and belief," fail to state a plausible federal claim.

## I. THE PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM FOR VIOLATION OF CONSTITUTIONAL RIGHTS UNDER § 1983.

The Schaefers do not mention 42 U.S.C. § 1983 in their Complaint.  The Court notes, however, that the means by which a private individual seeks money damages for violation of his or

---

[8] The Court is unpersuaded by the Schaefers' argument that the Defendants' wrongdoing should be construed as action, rather than inaction, because it was an affirmative refusal to act.  See Tr. at 18:17-19 (Banks)("[T]he affirmative act in this case is not acting when you have notice that you need to act.").  The Defendants, according to the Complaint, did nothing, even though they were aware of facts that the Schaefers allege should have prompted them to act.  The Court finds this form of wrongdoing to be properly characterized as inaction rather than action.

her constitutional rights is by the mechanism of 42 U.S.C. § 1983.  The Court thus assumes that it

is the vehicle through which the Schaefers assert their constitutional claims.  The Court will address

the Title IX claim and, to the extent that one has been asserted, the FERPA claim, separately.

### A.    THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF AS' SUBSTANTIVE DUE-PROCESS RIGHTS.

Because the conduct alleged against the Defendants in this case is inaction and failure to

protect students from private violence, the Schaefers must establish their right to relief under their

substantive-due-process claim by way of either the special-relationship doctrine or the danger-

creation doctrine.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 195;

Davidson v. Cannon, 474 U.S. at 348; Christianson v. City of Tulsa, 332 F.3d at 1280; Graham v.

Indep. Sch. Dist. No. 1-89, 22 F.3d at 994-95.  The Schaefers do not allege that the school had a duty

to protect AS from assaults by other students under the special-relationship doctrine.  See Transcript

of Hearing at 7:19-24 (taken April 26, 2010)("Tr.")("THE COURT: Let me ask you, on the special

relationship exception, are you trying to come under the special relationship exception or just the

creation of danger claim?   MS. BANKS: Looking at this, Your Honor, just the creation of danger

claim.")(Court, Banks).[9]  In any case, the law appears to preclude such an argument.  In Seamons

v. Snow, the Tenth Circuit stated:

> [W]e [have] held that schools have no duty under the Due Process Clause to protect
> students from assaults by other students, even where the school knew or should have
> known of the danger presented. . . .  Inaction by the state, in the face of a known
> danger, is not enough to trigger a constitutional duty to protect unless the state has
> a custodial or other "special relationship" with the victim.

84 F.3d at 1235-36.  Thus, none of the Defendants can properly be found liable for violating AS'

---

[9] The Court's citations to transcript of the hearing refers to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

due-process rights under such a theory.

The Schaefers' substantive-due-process claim fails under the danger-creation theory as well. To state a claim under the danger-creation theory, the Schaefers must plead facts that satisfy the following six factors: (i) the state and individual actors must have created the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious and known; (v) the defendant must have acted recklessly in conscious disregard of that risk; and (vi) such conduct, when viewed in total, must shock the conscience.  See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1126.  The Schaefers' allegations cannot satisfy at least the first and last elements of this test.

The Schaefers have failed to allege sufficient failures, omissions, or actions by the Defendants to constitute "creat[ing] the danger or increas[ing] [AS'] vulnerability to the danger in some way."  The only argument that the Schaefers put forth to satisfy this element, other than the bald assertion that "[t]he identified failures by Defendants to take certain necessary and fundamental administrative steps created the danger or increased A.S.'s vulnerability," Response at 21, is this:

> Defendants . . . increased A.S.'s vulnerability to danger by providing the vulnerable sixth graders (and their parents) with a false sense of security during the sixth grade orientation that they would be safe and that Defendants had taken the administrative steps necessary to protect them.  By providing such orientations, Defendants placed the sixth grade students in a worse and/or more vulnerable position than they might have been in if Defendants had not provided the orientation.

Response at 22.  The Defendants refer to this argument as "perverse," and argue that such an orientation was to notify students of unacceptable behavior and its consequences, and direct the Court to case law that holds that "allegations of lulling and doing nothing do not give rise to a

reasonable expectation of relief [for a violation of substantive due process], given <u>DeShaney</u> requires an affirmative act before imposing liability."  Defendants Las Cruces Public School District, Dante Thacker, and Daniel Gomez' Reply to Plaintiffs' Response in Opposition to Motion to Dismiss at 10-11, filed December 29, 2009 (Doc. 14)(quoting <u>Robbins v. Oklahoma</u>, 519 F.3d at 1252); Tr. at 15:12-22 (Hughes).

Even ignoring the additional authority the Defendants provided, the Court is inclined to agree with the Defendants that there was no conduct by them that created danger or increased AS' vulnerability to danger.  The school orientation, if anything, should have put children on notice that the conduct discussed did periodically occur.  The orientation informed the children that there would be repercussions if a student were to assault, bully, or harass another student -- repercussions that would be unnecessary if no such conduct ever occurred.  Exposure to society generally teaches one that, if there are rules prohibiting certain conduct, those rules were generally put in place after such conduct occurred.  Even "vulnerable sixth graders (and their parents)" know that some people do not follow the rules, regardless what the punishment may be for violation.  If the school officials performing the orientation affirmatively stated to the students that the students would not be subjected to bullying or harassment, the Court's conclusion might be different.  On the facts of this case, however, the Court cannot reasonably conclude that an orientation which might have put the more naive sixth-graders on notice that bullying occasionally occurs placed any sixth-grader in a more vulnerable position than he or she would be without the orientation.

The Tenth Circuit's decision in <u>Robbins v. Oklahoma</u> further reinforces this decision.  In that case, the Robbinses sued the Oklahoma Department of Human Services and various individuals based on the death of their eight-month-old infant, Renee.  <u>See</u> 519 F.3d at 1245.  One of their claims was for violation of Renee's substantive-due-process rights under a danger-creation theory.

See id. at 1249.  The conduct alleged in the complaint was that the defendants

> "instructed Plaintiffs to place Renee Dawn Robbins in a specific Daycare"; "informed Melissa that the McKinney Daycare was the only Daycare to which Renee could attend due to financial considerations"; "were or should have been aware of the past nature of McKinney's personal background"; "knew that Dustin Robbins and Melissa Gillum were relying upon DHS to provide them with a safe environment for Renee"; "fail[ed] to take steps to ensure that Renee was placed in a safe environment"; "lulled the Plaintiffs into a false sense of security about Renee's welfare"; "failed to correct the misimpressions that the DHS generated report of available Daycare facilities engendered"; and "continued to place children in [Ms. McKinney's] custody . . . instead of revoking [her] license."

Id. at 1250-51.  The Tenth Circuit swept away most of the allegations by finding that "the defendants cannot be held liable for their failure to protect Renee from harm, absent some prior affirmative act that incurred a duty to protect."  Id. at 1251.  With respect to "lull[ing] the Plaintiffs into a false sense of security" -- the only conduct that arguably occurred in the Schaefers' case -- the Tenth Circuit concluded that "allegations of 'lulling' and 'doing nothing' do not give rise to a reasonable expectation of relief, given that DeShaney requires an affirmative act before imposing liability."  Id. at 1252.  Lulling and doing nothing is all that the Schaefers allege in this case -- that the Defendants held an orientation that created a false sense of security and then did not implement certain policies or take certain actions.  The Court thus finds that the Schaefers have failed to state a claim for violation of AS' substantive-due-process rights under a danger-creation theory.

The Court also concludes that the conduct in this case does not "shock the conscience."  Assuming the absolute worst from the Schaefers' alleged facts, the Defendants were aware of three instances of an unknown eighth-grade student racking various sixth-grade students within the span of a month, and failed to implement policies to improve hallway monitoring and stop this conduct from occurring in time to prevent AS from falling victim to the same fate.  Further, the Defendants indicated to the sixth graders that it had policies in place to punish individuals that assaulted other

students but did not, in fact, have such policies.

While such behavior may be worthy of remedy under tort law, and perhaps worthy of punishment in the form of punitive damages, the Court's conscience is not shocked. First of all, the conduct that the Schaefers assert is twofold: (i) doing nothing in the face of the first three reported instances of one student racking another, conduct which could arguably be characterized as sexual assault; and (ii) identifying AS' as a racking victim at a school assembly in which the medical dangers of racking were discussed, resulting in AS' embarrassment and ridicule and potentially subjecting him to a greater risk of future abuse by other students. The Tenth Circuit has stated, however, that the "shocks the conscience" standard requires "a high level of outrageousness," Camuglia v. the City of Albuquerque, 448 F.3d at 1223, requiring something more than negligent, reckless, or even intentional conduct, see id. at 1222. "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Uhlrig v. Harder, 64 F.3d at 574. That standard is not met in this case.

Schools -- in fact, almost all societies -- have bullies, and sometimes bullies attack other students. The Court agrees that schools have some responsibility for ensuring the safety of the children that attend them, but children can be difficult to control. Most parents would agree that a child, if he or she so desires, can find a way to get into trouble, no matter how many safeguards are put in place. This inevitability does not, of course, excuse the school from its duty to protect its students -- a duty that the Court need not decide whether the Defendants have violated in this case -- but the difficulty of controlling middle school students decreases the shocking nature of the conduct at issue. Other than their claims that the faculty and staff were not adequately trained, the Schaefers allege that the Defendants should have had more consistent adult supervision of the common areas. See Response at 29. Any number of actions by the Defendants might have remedied the problem,

but the Court's conscience is not shocked by the Defendants' failure to consider or implement such a policy. Even if the Defendants knew that students frequently -- more than three times per month -- attacked other students in the halls and declined to implement safety measures to minimize that conduct, the Court is not convinced that it would rise to the level of shocking the conscience. The Court thus grants the Defendants' motion to dismiss the Schaefers' Fourteenth-Amendment due-process claim against the Defendants in both their individual and official capacities.

**B.      THE PLAINTIFFS HAVE FAILED TO STATE A VALID CLAIM FOR VIOLATION OF THE EQUAL-PROTECTION CLAUSE.**

The Schaefers apparently attempt to allege that the discrimination was based on gender or, perhaps, on the basis of being sixth-grade boys. At the hearing, CaraLyn Banks, the Schaefers' attorney, conveyed to the Court that the discrete and insular minority that she was alleging discrimination against was sixth-grade boys. See Tr. at 27:20-28:14 (Court, Banks). The Court can find no other arguable classification that might raise equal-protection concerns. Under either alleged classification, however, the Schaefers fail to state a claim under the equal-protection clause.

In general, the Court notes that the school's actions -- or, more properly labeled, inaction -- as alleged by the Schaefers, was not directed at any particular group of students. The Defendants did not treat any student or group of students differently than any other "similarly situation" group of students. Their inactions treated all students equally. The conduct of the eighth-grade boys arguably singled out the sixth-grade boys, but there is no heightened scrutiny of alleged discrimination against sixth graders, as there is alleged discrimination based on race, ethnicity, national origin, or gender. The Court thus does not believe the facts of this case give rise to any

claim under the equal-protection clause.[10]  The Court also notes again that there is a strong argument to be made that a student racking another student is not the "sexual assault" as the Tenth Circuit envisioned when it found that a school district could be liable for failure to stop sexual assault about which it was aware.  See Murrell v. Sch. Dist. No. 1, 186 F.3d at 1245-51.[11]  Nevertheless, the Court assumes -- without deciding -- that racking is a sexual assault for the purpose of this opinion, and this assumption does not change the resolution of this constitutional claim.

To hold the school district -- or, presumably, the relevant administrative officials of the school district -- liable "for sexual harassment under the Fourteenth Amendment, a plaintiff must demonstrate that a state employee's discriminatory actions are representative of an official policy

---

[10] The Court notes that all of the equal-protection cases on which the Schaefers rely involve male-on-female sexual harassment, in which case the government actor's failure to remedy the harassment would implicitly be a preference for the male perpetrator over the female victim.  In this case, both the assailant and victim were male.  Because the Court does not believe that the Schaefers have alleged that the Defendants' inactions treated any group differently, it need not decide whether male-on-male sexual harassment -- even if it were performed directly by the school official -- would raise equal-protection concerns.

[11] The Defendants have made such an argument in their supplemental brief.  See Supplement at 3, filed April 28, 2010 (Doc. 27)(arguing, for the purpose of Title IX, that the assault on AS was "obviously" not "sexual in nature")(citing Seamons v. Snow, 84 F.3d at 1233).  Unfortunately for the Defendants, Seamons v. Snow does not stand for the proposition the Defendants assert in their brief.  While the Tenth Circuit finds that the defendants' conduct in that case was not sexual in nature, the plaintiff did not base his complaint on the initial locker-room incident in which he was taped, naked, to a towel rack and displayed to a girl that he had previously dated.  See 84 F.3d at 1230 ("Brian does not complain of the original assault against him"); id. at 1235 ("As noted before, Brian has stipulated that he does not seek to hold Defendants liable for the actual locker room incident.").  It nevertheless provides persuasive authority, through dicta and the dissent, that the Tenth Circuit might not consider racking to be sexual harassment.  See id. at 1233 ("Brian fails to allege any facts that would suggest he was subjected to unwelcomed sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him."); id. at 1239-40 (McKay, J, dissenting)(finding that the defendants' conduct inextricably intertwined with the locker-room incident, and stating that the "incident was clearly sexual in nature" because the initial assault "clearly derive[s] [its] power to embarrass and to intimidate from [its] sexual and sex-based nature.").

or custom of the municipal institution, or taken by an official with final policy making authority."

Murrell v. Sch. Dist. No. 1, 186 F.3d at 1249.  When the sexual harassment is by a third-party, the plaintiff must prove that there was an "official policy of deliberate indifference to sexual harassment."  Id. at 1249.  The facts in the Complaint show that this claim fails.  Before any incident, the school held an orientation meeting in which school officials stated that "bullying, harassment, fighting, gangs, and physical/sexual assault" would not be tolerated.  Complaint ¶ 9, at 2.Moreover, the Schaefers' allegations include an allegation that, after four incidents of student-on-student assault, at least two of which involved racking, the school held a discussion in the gymnasium of Zia Middle School to discuss the injuries that can result from racking -- the sexual-assault behavior about which the Schaefers complain.  This meeting was apparently in response to those four incidents -- there would be no other reason to explain the results of racking to a group of middle school boys -- and therefore appears to be an attempt to put an end to this behavior.  The thrust of the Schaefers' Complaint appears to be that they believe this meeting was an inadequate response and that it did not occur early enough, i.e., before their son was a victim.  In the Court's view, however, the Defendants responded to this problem reasonably soon after it was brought to their attention, and thus -- given its two separate meetings -- did not have an official policy or custom of deliberate indifference to sexual harassment.[12]  Admittedly, the Defendants took action

---

[12] The Court also notes that the Tenth Circuit in Murrell v. School District No. 1 stated that "acts of sexual harassment by a student directed solely at Ms. Jones do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter."  186 F.3d at 1250.  The Court is not sure how that statement might affect the outcome of this case.  If the Tenth Circuit's emphasis was on the fact that the harassing conduct was by a student, rather than by faculty, it would weigh against finding liability against the Defendants in their official capacity and against the district, because, again, students committed all harassing conduct in this case.  If the emphasis was on the fact that it was all directed at Ms. Jones, a single student, it might make Murrell v. School District No. 1 less effective authority in this case because there were several victims in this case, making the problem more wide-spread and apparently

only after being notified of at least two, possibly four, independent racking incidents, allegedly by individuals in the same group of eighth-grade boys.  The Defendants took action, however, as soon as it became evident that they were not dealing with isolated incidents of one student attacking another, but rather were dealing with a bigger problem.  And the action the Defendants took was one that is commonly used with large groups of children -- they sat the children down and tried to explain why the racking incidents should stop.  Because there was no official policy or institutional custom of deliberate indifference to sexual harassment by students against other students, the Court will dismiss the Schaefers' equal-protection claim against the Defendants in their official capacity.

Regarding the individual Defendants in their individual capacities on the basis of supervisory liability, the result is the same.  "'[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant' and not upon mere negligence."  Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250.  "[T]o state a claim of 'deliberate' discriminatory conduct, [a plaintiff] must state facts sufficient to allege 'defendants actually knew of and acquiesced in'" the wrongful conduct.  In Murrell v. School District No. 1, the Tenth Circuit was faced with the quintessential case of a school official acquiescing in a pattern of sexual assaults.  The principal and several teachers were aware of an ongoing pattern of sexual attacks by a particular student against the plaintiff.  See 186 F.3d at 1243-44.  One of the attacks involved Mr. Doe taking the victim to a secluded area and attacking her, during which time the victim vomited and got menstrual blood on her clothing.  See id. at 1243.  When a janitor discovered the two, he merely "told them to clean up the mess, returned them to class, and advised the teachers where he had found them."  Id. at 1243.

institutional in nature.  The Court need not resolve this question, however, because the Court finds that the Defendants' response to complaints of harassment shows that the Defendants were not deliberately indifferent and that there was no institutional policy of deliberate indifference.

Even when brought directly to the principal's attention, the principal refused to take action.  See id. at 1244.  In fact, the principal suspended the victim.  See id. at 1244.  In this case, the conduct was arguably less severe and yet the Defendants took some action in response.  The action these Defendants took, while it might be insufficient under state-law tort principles, undermines the inference that the Defendants were deliberately indifferent, or that they "actually knew of and acquiesced in" the assaults being committed by other students.  Again, while the Schaefers allege that the Defendants should have provided better training to their staff and faculty, and should have provided more adult supervision over the students in the common areas, in the context of this case, the question is not what the Defendants could have done better, but whether they were deliberately indifferent or knew of and acquiesced in the wrongful conduct.  The Court will thus grant the Defendants' motion to dismiss the Schaefers' equal-protection claim against the individual defendants.

During the hearing, Ms. Banks appeared to argue that the Court should consider the equal-protection claim to be alleging unequal treatment of male and female students because the male students were brought into the gymnasium after the assaults occurred, and were involved in a discussion about the injuries that can result from racking and that racking will not be tolerated, yet the female students were not.  See Tr. at 29:11-31:5 (Court, Banks).  The Court does not find such a claim in the Complaint and declines to find that such treatment violates the equal-protection clause.  As the Supreme Court has recognized, inherent differences in the genders will sometimes make treating males and females differently both reasonable and permissible under the equal-protection clause.  See Michael M. v. Superior Court of Sonoma County, 450 U.S. at 478 ("[W]hile detrimental gender classifications by government often violate the Constitution, they do not always do so, for the reason that there are differences between males and females that the Constitution

necessarily recognizes.").  In this case, the Schaefers do not allege that there had been any racking incidents by or against female students, and thus there was no reason to bring the female students into a room to talk about male genitalia and the medical problems that can be caused by striking them.

## II.    THE FACTUAL ALLEGATIONS IN THE COMPLAINT DO NOT SET FORTH A TITLE IX CLAIM.

The elements of a Title IX claims are: "(1) that [the student] was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." Seamons v. Snow, 84 F.3d at 1232.  Such a claim can be leveled only against the school district and not against any individual defendant.  See Lipsett v. Univ. of Puerto Rico, 864 F.2d at 901 ("In implying a cause of action under Title IX, the Supreme Court has considered only actions against educational institutions."); Clay v. Bd. of Trs. of Neosho Cmty Coll., 905 F. Supp. at 1495-96; Leija v. Cantutilla Sch. Dist., 887 F. Supp. at 952; Aurelia D. v. Monroe County Bd. of Educ., 862 F. Supp. at 367; Tr. at 33:13-16 (Court, Banks)(Ms. Banks conceding that the Title IX claim can only be brought against the school district).  With respect to sexual harassment by a non-employee third-party, however, "[a] school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (citing Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d at 1246).  The Schaefers' allegations do not adequately satisfy the first three elements of this test.

## A.    THE DEFENDANTS DID NOT HAVE ACTUAL KNOWLEDGE OF THE SEXUAL ASSAULT OF AS.

The Schaefers' allegations are that, because the Defendants knew of three prior incidents of one student assaulting another, at least one of which was arguably a sexual assault, the Defendants were on notice that sexually assaultive behavior was occurring and yet they took no action. Regarding the first element, the Defendants could not have known of the sexual harassment of AS by an unknown student because the only incident of assault on AS had not yet occurred.  Although the Tenth Circuit has not resolved the issue, it has noted that "district courts differ as to whether notice of prior complaints as opposed to notice of the current harassment for which redress is sought triggers liability under Title IX." Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119.  It has affirmatively held, however, that "a failure to prevent sexual harassment by a student *before it occurs* does not violate Title IX . . . absent a showing of an institutional policy of indifference." Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.9 (emphasis in original).  In this case, the harasser is an unknown student whom the Schaefers do not allege to be the same harasser responsible for the prior three incidents.[13]  To hold the Defendants liable would be to punish them for failure to prevent a sexual assault by this student before it occurred.[14]

The cases on which the Schaefers rely to support their claims all deal with a known individual who has engaged in repeated harassment of one or more victims, and which harassment

_____

[13] The Schaefers allege, "[u]pon information and belief," that the unknown student was a member of a group of students that was responsible for the prior assaults.  They do not, however, try to characterize the group by size or composition, or identify the boy that attacked AS as the assailant in any prior incident.

[14] This section applies with almost equal force to the Court's discussion of the Schaefers' equal-protection claim.  The Tenth Circuit has stated that "failure to prevent sexual harassment by a student *before it occurs* does not violate Title IX or the Fourteenth Amendment absent a showing of an institutional policy of indifference." Murrell v. Sch. Dist. No. 1, 186 F.3d at 1250 n.7.

was known to one or more school officials.  Those cases did not require institutional changes to remedy the harassing conduct -- the solution required only that the officials take the harasser out of play -- and still the officials did nothing.  In <u>Murrell v. School District No. 1</u>, the school officials were aware that "John Doe" had a history of inappropriate sexual conduct, yet gave him the position of "janitorial assistant," which included special access to unsupervised areas of the school.  186 F.3d at 1242-43.  Using that special access, John Doe repeatedly sexually assaulted the victim, a developmentally disabled girl named Penelope.  <u>See id.</u> at 1243-44.  When Penelope told her teachers about the abuse, the teachers told Penelope not to tell her mother about it and to "forget it happened at all."  <u>Id.</u> at 1244.  When Penelope's mother finally learned of the assaults, she asked the school's principal to take action, and the principal refused.  <u>See id.</u>  In another case upon which the Schaefers rely, and upon which the Tenth Circuit in <u>Murrell v. School District No. 1</u> relied, <u>Davis v. Monroe County Board of Education</u>, the defendants failed to respond to numerous complaints that a particular student, G.F., had been harassing the plaintiff and other girls over the course of several months.  <u>See</u> 526 U.S. at 633-35.  <u>Rost ex rel K.C. v. Steamboat Springs RE-2 School District</u> was broader, as it involved harassing conduct by multiple individuals against a single victim, but the plaintiff named the individuals involved, and their conduct, as a group, was continuous and persistent.  <u>See</u> 511 F.3d at 1117 ("Beginning in seventh grade and continuing to eighth grade, K.C. was coerced into performing various sexual acts with a number of boys including Steven Thomas, Nick Mangione, Alex Church, and Thomas Barnes ('the boys') who were all named as individual defendants in the complaint.").  <u>See</u> <u>Noland v. McAdoo</u>, 39 F.3d 269, 271 (10th Cir. 1994)(alleging that a specific individual -- defendant McAdoo -- had sexually harassed her); <u>Jojola v. Chavez</u>, 55 F.3d 488, 490 (10th Cir. 1995)(alleging that a specific individual -- defendant Chavez -- had sexually molested her).

The Court is not comfortable extending the logic of Supreme Court's and the Tenth Circuit's cases. To make this case fit, the Court would have to find that assault by one student against another is sufficient to provide the Defendants actual knowledge of the impending sexual assault of AS. Moreover, the Court notes that the steps necessary to stop a known perpetrator from assaulting students -- or, in the case of a student-perpetrator, other students -- are more straightforward and can be implemented as soon as the necessary school officials are notified of the harassing conduct. The steps necessary to stop random assaults by one student against another are often of institutional magnitude and may take multiple steps to implement. Furthermore, institutions may attempt to remedy the problem through a policy of individualized punishment, using specific and general deterrence principles, rather than through the kind of hall-monitoring that the Schaefers appear to desire.

The Court's interpretation of the law is consistent with the Supreme Court's use of the phrase "actual knowledge," as opposed to "constructive knowledge," "knowledge," or "notice." See Davis v. Monroe County Bd. of Educ., 526 U.S. at 642 ("[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.")(emphasis added). Black's Law Dictionary defines "actual knowledge" as "[d]irect and clear knowledge, as distinguished from constructive knowledge," and defines "constructive knowledge" as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributable by law to a given person." Black's Law Dictionary at 950.[15] Because the alleged sexual assault in this case

_____

[15] A "notice" standard could arguably be met with regard to a fact if the person "(1) has actual notice of it; (2) has received information about it; (3) has reason to know about it; (4) knows

-37-

had not yet occurred, no official could have had actual knowledge of it; only when sexual harassment is ongoing and the school officials learn of it can the officials be said to have actual knowledge of the harassment.  The Defendants had actual knowledge of three prior incidents of sexual assault by different assailants against different victims, but the most that can be said about the sexual assault to which AS was a victim -- the only assault for which the Schaefers seek a remedy -- is that the Defendants were put on notice that it was a possibility.  Until the incident occurred, there was no sexual assault of AS.  Neither the Supreme Court nor the Tenth Circuit have said that a school district would be liable if it was aware that sexual harassment could, might, or would likely occur in the future -- any one of which could arguably encompass the facts that the Schaefers have pled.  Instead, the Supreme Court and Tenth Circuit maintain that a school district can be liable under Title IX where it is "deliberately indifferent to sexual harassment, of which [it] ha[s] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis v. Monroe County Bd. of Educ., 526 U.S. at 642.  Because the Defendants did not have actual knowledge of any sexual assault of AS before it occurred, the Court finds that the Defendants cannot be liable to the Schaefers under Title IX.[16]

---

about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or record." Black's Law Dictionary at 1164.  A simple "knowledge" standard would include "awareness or understanding of a fact or circumstance." Id. at 950.  The Supreme Court did not use the term "notice" or "knowledge," however; they used the term "actual knowledge."

[16] As the Tenth Circuit implied in Murrell v. School District No. 1, if a school has an institutional policy of indifference, it might be liable for failure to prevent student-on-student sexual assault before it occurs.  See 186 F.3d at 1250 n.9.  For the reasons that the Court will discuss in regard to the Defendants' alleged "deliberate indifference," the Court finds that the Defendant school district did not have an institutional policy of indifference.

**B.    THE DEFENDANTS DID NOT REMAIN DELIBERATELY INDIFFERENT TO THE ASSAULTS THAT WERE OCCURRING AT THE SCHOOL.**

The second element necessary to establish a Title IX claim against a school district for the sexual assault of a non-employee third-party is that the district was deliberately indifferent to the ongoing wrongful conduct.  See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (citing Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d at 1246).  The Court finds that the allegations in the Complaint demonstrate that the Defendants were not deliberately indifferent to the alleged sexual assault of AS.  The Complaint alleges that, at the beginning of the school year, all incoming sixth graders were required to attend an orientation in which the students were admonished that "Zia Middle School would not tolerate bullying, harassment, fighting, gangs, and physical/sexual assault and that punishment would be imposed for such conduct."  Complaint ¶ 9, at 2.  The facts allege that, after the initial orientation, at least two, and as many as four, instances of racking occurred before the Defendants took further action.  At that point, however, they took action.  On October 30, 2006, the Defendants held another meeting with all the boys in the school to discuss the injuries that racking can cause, presumably to dissuade the boys from engaging in such conduct.

"A district is deliberately indifferent to acts of student-on-student harassment 'only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (quoting Davis v. Monroe County Bd. of Educ., 526 U.S. at 648).  The word "indifferent" refers to a "lack of interest in or concern about something; apathy."  Black's Law Dictionary at 842.  Where the facts show that the district is trying to remedy the situation, such facts "suggest the district was not deliberately indifferent to or tacitly approving of the misconduct."  Rost ex rel. K.C. v.

Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (discussing the deliberate-indifference element of an equal-protection claim).   Even if the orientation and boys-only meeting were the administration's only reactions -- something the Schaefers allege largely "[u]pon information and belief," it was not "clearly unreasonable."   Given the facts alleged, construed in the light most favorable to the Schaefers, the Defendants did not consider the severity of the bullying until several incidents had occurred, but the first post-incident response was an attempt to educate the bullies to the harm they were potentially inflicting.   The Court can only understand this response as appealing to the eighth-graders' humanity and fear of punishment in an effort to dissuade them from engaging in this bullying conduct.   Furthermore, even if one were to argue that the Defendants were deliberately indifferent to the first three racking incidents, the Tenth Circuit has said that a violation of Title IX occurs only where the school district "remains deliberately indifferent to acts of harassment of which it has actual knowledge," Murrell v. Sch. Dist. No. 1, 186 F.3d at 1246 (emphasis added), and the Defendants' decision to take action after the fourth incident indicates that they were no longer indifferent to these assaults.   While this response may be insufficient -- either under New Mexico tort law principles or by the Schaefers' opinions -- the Court does not find it to be clearly unreasonable such that it raises a federal statutory claim of gender-based discrimination through pervasive sexual harassment.

### C.     WHILE THE SEXUAL HARASSMENT IN THIS CASE WAS SEVERE AND OBJECTIVELY OFFENSIVE, THERE IS NO ALLEGATION SHOWING THAT THE HARASSMENT WAS PERVASIVE.

The third element of a Title IX claim based on student-on-student sexual harassment is that the "harassment [was] severe, pervasive and objectively offensive." Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (citing Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d at 1246).   First, the alleged injuries demonstrate that the sexual harassment was, in this case,

particularly severe.  The Court witnessed numerous injuries to that portion of the male anatomy during its years as a college football player but has never heard of it resulting in the kind of medical problems that AS is allegedly experiencing.  Second, the Court does not question that the abuse in this case was objectively offensive.  Racking is a thoroughly unpleasant experience that makes most men grimace by its mere mention.  It is this fact that makes racking such an enduring form of abuse for male children to inflict on one another.[17]

On the other hand, the Court has difficulty finding this sexual harassment to be pervasive.  Considering only the attack on AS, the Court finds that a single attack, by definition, cannot be pervasive.  See The American Heritage Dictionary of the English Language at 1353 ("per•va•sive . . . Having the quality or tendency to pervade or permeate."); id. ("per•vade . . . To be present throughout; permeate"); id. at 1349 ("per•me•ate . . . To spread or flow throughout . . . .").  It occurs only once and at a single place in the school.  Even considering all four alleged instances of student-on-student assault over the course of two months, the Court has difficulty finding the pervasiveness prong satisfied.  That equates to approximately one attack every two weeks.  Although the Court recognizes that, in the discrimination context, the Tenth Circuit has found that "pervasiveness" is not solely based on the number of occurrences, the Court finds it unlikely that the Tenth Circuit would consider these four assaults, over two months, between different pairs of students, to be pervasive.  See Nieto v. Kapoor, 268 F.3d 1208, 1219 n.8 (10th Cir. 2001)("[W]hile courts have tended to count events over time to determine pervasiveness, the word 'pervasive' is not a counting measure.  The trier of fact utilizes a broader contextual analysis.")(quoting Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1415 (10th Cir. 1997))).

_____

[17] That is not to say that female children do not or cannot rack male children.  Those facts, however, are not currently before the Court.

-41-

**D.    THE ALLEGATIONS SHOW THAT THE HARASSMENT, TO SOME EXTENT, DEPRIVED AS OF THE BENEFITS OF THE EDUCATIONAL PROGRAM.**

The final element of a Title IX claim based on student-on-student sexual assault is that the assault was so severe, pervasive and objectively offensive that it "depriv[ed] [the victim of] access to the educational benefits or opportunities provided by the school." Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d at 1119 (citing Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d at 1246). The Complaint alleges that, based on the attack, "AS complained of abdominal pain, nausea, severe and constant pain in his testicles and cramping," that the attack resulted in legitimate medical ailments, and that "[h]e missed school due to the excruciating pain." Complaint ¶¶ 32-33, at 7. At the hearing, Ms. Banks stated that AS missed between ten and fourteen days because of his injuries, see Tr. at 36:16-23 (Court, Banks), but that fact is not alleged in the Complaint. The Court declines to opine whether ten to fourteen days, if that were the sum alleged in the Complaint, would satisfy the deprivation prong of the Title IX test. The facts as pled satisfy the fourth element. Construing the fact in the light most favorable to the Schaefers, missing school would deprive one of the benefits of the educational benefits of that school. The Court thus finds that the fourth element is satisfied. Because the Court has found that the Schaefers cannot satisfy the first three elements of their Title IX claim, however, the Court will grant the Defendants' motion to dismiss that claim.

**III.    THE PLAINTIFFS DO NOT ADEQUATELY ALLEGE A FERPA CLAIM.**

It is not clear from the Complaint that the Plaintiffs are alleging a claim under FERPA. The Schaefers state that, in the context of the Complaint, they used the disclosure of protected health information regarding AS, which was in violation of FERPA, as an example of the Defendants' callus disregard of any of the rights afforded to AS. See Complaint ¶¶ 69-72, at 13-14. In the

Complaint, the Plaintiffs note that, because of this unauthorized violation, AS was subject to additional harassment, including sexual harassment from other students and additional embarrassment given the nature of his injury.  See Complaint ¶ 72, at 14.  The Plaintiffs maintain that this unauthorized disclosure and the subsequent harassment that occurred after the unauthorized disclosure constitute no more than another example of the conscious indifference and the Defendants' shocking conduct.

The Defendants assert that FERPA does not create a private cause of action and thus that the Court should dismiss any federal claim that the Schaefers assert based on FERPA.  See Motion at 25 (citing 20 U.S.C. § 1232g, Gonzaga Univ. v. Doe, 536 U.S. 273, 279 (2002), and Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1062 (10th Cir. 2002)).  R. Michael Hughes, the Defendants' attorney, reiterated this argument during the hearing.  See Tr. at 40:8-16 (Court, Hughes).  The Defendants, and Ms. Banks at the hearing, agreed that FERPA does not create a private cause of action.  See Response at 25 ("Plaintiffs do not dispute that the Federal Education Rights and Privacy Act, 20 U.S.C. § 1232, does not create a private cause of action."); Tr. at 12:7-9 (Court, Banks); id. at 40:17-24 (Court, Banks).  Because FERPA does not provide for a private right of action, and because violations of FERPA are not actionable under § 1983, the Court will dismiss the claims alleging violations of FERPA with prejudice.[18]

The Schaefers ask the Court to consider the alleged FERPA violation as further indicia of conscious-shocking behavior.  See Tr. at 56:6-19 (Court, Banks)("THE COURT: [Y]ou're simply using the . . . the alleged violation of the FERPA . . . to support your shock the conscience?  MS.

---

[18] Because the Court has concluded that the Schaefers do not state a federal claim, the Court will not delve into the second prong of the qualified-immunity inquiry -- whether the rights at issue were clearly established at the time of the Defendants' acts and omissions.

BANKS: Sure. . . . it's just part of the argument that what they did was shocking before and after."). The Court has considered that factor, but it does not change the Court's substantive due-process analysis.  While the Defendants may have made a poor choice by using AS' name at the October 30, 2010 meeting, this conduct is not conscious-shocking.  The group was limited to boys, many of who may have already known of the incident.  In any case, poor judgment does not equate with the outrageous, conscience-shocking conduct.

IV.    **BECAUSE THE SCHAEFERS FAIL TO STATE A FEDERAL CLAIM, THE COURT WILL REMAND THE REMAINING CLAIMS TO STATE COURT.**

The Defendants filed a notice of removal alleging that the Court had jurisdiction based on the Schaefers' assertion of claims based in federal law.  See Notice of Removal ¶¶ 3-6, at 2.  The Defendants allege that the Court has pendent jurisdiction over the state-law claims.  See id. ¶ 6, at 2.  The Court agrees that it had supplemental jurisdiction under 28 U.S.C. § 1367 over the state-law claims because the Complaint included claims asserting federal questions over which the Court had original jurisdiction under 28 U.S.C. § 1331.  The Court, however, has dismissed all federal claims in the Complaint.  The supplemental-jurisdiction statute, 28 U.S.C. § 1367, allows the Court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (1) the claim raises a novel or complex issue of State law, [or] (3) the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  Because the Complaint raises complex issues of state tort and sovereign-immunity law, and because the Court has dismissed all claims over which it has original jurisdiction, the Court will decline jurisdiction over the remaining state-law claims and remand those back to Third Judicial District Court, County of Doña Ana, State of New Mexico.  The Court thus does not address that part of the Defendants' motion addressing the state-law claims.  The Schaefers may renew the motion to dismiss as to those claims in state court.

**IT IS ORDERED** that the: (i) Defendants Las Cruces Public School District, Dante Thacker, and Daniel Gomez' Motion to Dismiss Plaintiffs' Complaint on the Basis of Qualified Immunity and Other Grounds is granted in part; and (ii) Defendant Sonia Diaz' Motion to Dismiss Plaintiffs' Complaint on the Basis of Qualified Immunity and Other Grounds is granted in part. Both motions are granted with respect to the Schaefers' federal law claims and those claims are hereby dismissed with prejudice. The case and the remaining state-law claims will be remanded to the Third Judicial District Court, County of Doña Ana, State of New Mexico.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Thomas A. Sandenaw , Jr.
CaraLyn Banks
Sandenaw & Anderson, P.C.
Las Cruces, New Mexico

     *Attorneys for the Plaintiff*

Elizabeth L. German
R. Michael Hughes
German & Associates, LLC
Albuquerque, New Mexico

     *Attorneys for Defendants Las Cruces Public School District,*
      *Dante Thacker, and Daniel Gomez*

Ann Louise Keith
John S. Stiff & Associates LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant Sonia Diaz, Superintendent*
      *of the Las Cruces Public Schools, the Safety Officer at Zia*
      *Middle School*